IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2020 MAR 20  AM 9: 41

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| WES PERKINS, | § | |
| | § | Civil Case No. 1:20-CV-296 |
| Non-fiduciary Arrestee, | § | (assigned electronically) |
| and political "target," | § | **A20 CV296 LY** |
| | § | |
| Petitioner, | § | NO CONSENT TO |
| | § | ARBITRATION |
| v. | § | |
| | § | NO CONSENT TO |
| JOHN MISCHTIAN, Judge | § | NON-JUDICIAL |
| County Court at Law 2, Bell County, | § | DECISION-MAKING |
| Texas, | § | |
| Officially and Individually, and | § | |
| | § | |
| BELL COUNTY, TEXAS, | § | |
| | § | |
| Respondents. | § | JURY REQUESTED |

**ORIGINAL COMPLAINT**

COMES NOW WES PERKINS (Perkins), Plaintiff, who shows the following.

**Table of Contents**

ORIGINAL COMPLAINT FOR DAMAGES ................................................................ 2

Subject Matter Jurisdiction –§§ 1331, 1367 ................................................ 2

Personal jurisdiction ................................................................................ 3

Venue ........................................................................................................ 3

General Background .................................................................................. 4

Particular Background – MISCHTIAN never had jurisdiction ................... 4

    What does "**vehicle**" mean? .................................................................. 6

    STATE never had a case ........................................................................ 10

        No "transportation." ........................................................................ 10

        No "consent." ................................................................................... 11

        No "transportation" + No "consent" = No "**vehicle**." ..................... 13

Flash-jailing regarding Bond that Perkins already had ............................ 14

The Claims ................................................................................................ 15

    Illegal arrest. ................................................................................... 18

    Illegal search. .................................................................................. 19

    False imprisonment........................................................................ 20

    Witness intimidation....................................................................... 21

    Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right not to contract. ................... 23

    Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right not to exercise a privilege. ................................................................................................ 25

    Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to present his own defense. ................................................................................................ 26

    Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to Due Process, including Discovery. ........................................................................................ 28

    Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to appeal............................. 29

Request for Relief ..................................................................................... 31

§ 1746 DECLARATION – WES PERKINS................................................ 31

Certificate of Service ................................................................................ 32

## ORIGINAL COMPLAINT FOR DAMAGES

**Subject Matter Jurisdiction –§§ 1331, 1367**

1.    28 U.S.C. § 1331 – Federal question.

    A.    MISCHTIAN, in furtherance of "this state's" witch hunt policy, fully adopted and implemented by BELL COUNTY, which policy is applied to those politically stigmatized as "sovereign citizens," i.e., "domestic terr*rists," because they dare challenge jurisdiction in "transportation"

matters, and after exercising jurisdiction he never had regarding the "transportation" matter tried, exercised that jurisdiction one step further by flash-jailing Perkins regarding Bond.

B.    Thus, this matter arises, ultimately, from Perkins's exercise of his "right *not* to contract" and the exercise of the "right *not* to exercise a privilege." It also encompasses his rights to be free from unreasonable seizure and to be free from unreasonable search.

2.    28 U.S.C. § 1367 – Supplemental Jurisdiction.

A.    Regarding any and all matters that sound in state law, e.g., false imprisonment, etc., Perkins's claims arise out of the same facts that give rise to the claims raising federal questions.

3.    Perkins delivered, and each party Respondent received, Perkins's demand letter relevant to this matter.

**Personal jurisdiction**

4.    Both parties Respondent are subject to Service within the traditional jurisdictional boundaries of TEXAS.

5.    Both parties Respondent transact their commercial activity, in whole or in material part relevant to this case, within TEXAS and within BELL COUNTY.

6.    All actionable conduct occurred within TEXAS and within BELL COUNTY.

**Venue**

7.    All events occurred within TEXAS and within BELL COUNTY.

8.    All property involved was located within TEXAS, BELL COUNTY, and TRAVIS COUNTY.

9.    All damages were incurred within TEXAS, BELL COUNTY, and TRAVIS COUNTY.

**General Background**

10.    Perkins has been engaged in "transportation" defense for several years now.

11.    One of the venues in which Perkins has been compelled to defend himself in "transportation"-based matters is BELL COUNTY.

12.    For the details of the illegal arrest that got that activity started, *see* No. 1:17-CV-01173, W.D.Tex. (Austin).

**Particular Background – MISCHTIAN never had jurisdiction**

13.    MISCHTIAN's political stunt of flash-jailing Perkins regarding Bond came on the heels of MISCHTIAN's exercise of jurisdiction he never had over the trial. Addressed here is how we know MISCHTIAN never had jurisdiction in the first place.

14.    For negotiations purposes, the policy in BELL COUNTY is to file the Class C and offer the deal.  Because Perkins demanded that STATE prove up a case, for *any* level of charge, BELL COUNTY charged the Class B.

15.    Thus, the underlying case against Perkins was the Class B matter. To make material note of it, and it may be their way to keep that door open, the Class C case wasn't dismissed until after the conclusion of trial on the Class B.

Those trial level case numbers are these: Nos. 3-C-17-01209 (Class C) and 2-C-17-02820 (Class B) (Bell County Court at Law No. 2).

16.    On appeal, they are Nos. 03-19-356-CR and -357-CR (3d.CoA, Austin).

17.    MISCHTIAN never had jurisdiction, because STATE never had a case.

A.    All "transportation" enforcement provisions depend on one or more of these four core terms of legal conclusion:

1.    **"Operating."** TRANSP. CODE § 541.001(1), and §§ 601.002(8), 642.001(2), 647.001(5), 724.001(11), and 24.013(f)(2).

2.    **"Driving."** TRANSP. CODE § <u>522</u>.003(11).

3.    **"Motor vehicle."** *See* TRANSP. CODE §§ 501.002(17), 502.001(25), 522.003(21), 541.201(11), 601.002(5), 642.001(1), 647.001(4), 683.001(4), and 728.001(2).

4.    **"Vehicle."** *See* TRANSP. CODE § <u>502</u>.001(45). *See also* TRANSP. CODE §§ 502.001(24), 541.201(23), 621.001(9), and 750.003(a).

B.    Analyzing these terms, we find the following dependencies:

1.    **"Operating"** depends on **"vehicle."**

2.    **"Driving"** depends on **"motor vehicle,"** which depends on **"vehicle."**

3.    **"Motor vehicle"** depends on **"vehicle."**

4.    Since all of **"operating," "driving,"** and **"motor vehicle"** depend on **"vehicle,"** it follows that the entirety of the Trans. Code's enforcement mechanism depends on **"vehicle."**

C.    What does "**vehicle**" mean?

1.    "**Vehicle**" – unabridged.

"**Vehicle**" **means** a device in or by which a person or property is or may be transported or drawn [i.e., towed] on a public highway, other than a device used exclusively on stationary rails or tracks.

TRANSP. CODE § 502.001(45) (all emphasis added).

2.    "**Vehicle**" – first edit.

On these facts, we're not talking about a train or trolley.

"**Vehicle**" **means** a device in or by which a person or property is or may be transported or drawn [i.e., towed] on a public highway, ~~other than a device used exclusively on stationary rails or tracks~~.

3.    "**Vehicle**" – second edit.

This example is a tad over-generalized, but it aids in making the point, here. How many "school zone" "tickets" are dismissed because that "school zone" isn't actually on a "highway?" None.  Therefore, since "highway" doesn't mean "highway," alone, but also "street," "boulevard," "avenue," and etc., let's substitute "[land-going]" for "on a public highway;" hence, the following:

"**Vehicle**" **means** a [land-going] device in or by which a person or property is or may be transported or drawn [i.e., towed] ~~on a public highway~~.

4.    "**Vehicle**" – third edit.

The concept of "drawn" warrants its own legal analysis under some circumstances.  Here, it will facilitate getting to the bottom line to

apply one more fact-based edit. There's no "drawing" involved, here. We're not talking about a horse-drawn carriage, a rickshaw, a dog sled, or any of these forms of travel that involve the notion/concept of "drawing," which means, in essence, "towing." Frankly, "drawing" is a bit redundant, anyway.

**"Vehicle" means** a [land-going] device in or by which a person or property is or may be transported ~~or drawn [i.e., towed]~~.

5.      **"Vehicle"** – fourth edit.

The most critical part of the definition is the verb phrase: "is or may be transported." On a plain reading, this phrasing suggests that negating "transported" completely negates the verb. Logical, but, that's just not how this works. There's more to "**vehicle**" than just the commercial activity element, the "transportation" element. In other words, "experience doth show" that negating "transported," alone, does *not* negate the verb phrase. Knowing this, let's perform the algebraic expansion on the verb at this beginning stage:

**"Vehicle" means** a [land-going] device in or by which a person or property <u>is **transported** or may be **transported**</u>.

6.      **"Vehicle"** – the practical, working definition.

**"Vehicle" means** a [land-going] device in or by which a person or property is transported or may be transported.

---

7.     **"Vehicle"** – the elements (outline form).

**"Vehicle," a term of legal conclusion, means**

- a [land-going] device [car, truck, van, etc.]
- in or by which
  - a person
  - or property
    - » *is* transported
    - » *or may be* transported.

D.     Looking, then, at these two verb clauses, the first one, "*is* transported," is the easier of the two to analyze.

1.     In general, **"vehicle"** is not now and has never been a term that substitutes for "car," "truck," "van," etc.

2.     A **"vehicle"** is a land-going conveyance *used for a particular purpose*, which particular purpose is called "transportation."

3.     A car isn't a **"vehicle"** that is in any way, shape, manner, or form subject to *commercial*, "transportation" regulatory standards unless and until it's being used for that *commercial* purpose called "transportation."

4.     A car isn't a **"vehicle"** unless it's being used to "carry passengers or cargo."

5.     A car isn't a **"vehicle"** unless it's being used to remove people and/or property from one place to another *for hire*.

6.     This first verb clause is the "No 'transportation'" element.

E.      Looking, then, at the second of these two verb clauses, **"*or may be*** **transported**," we encounter what is best called "pirate speak" that's written into the very fabric of the language we call law.

1.      In *Lozman* (2013), S.Ct.U.S. construed the definition of "vessel."

    a.      A "vessel" includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3.

    b.      "Vessel" has a two-part, disjunctive verb clause.

        1)      The first part, "used," asks whether there's actual "transportation" activity going on.

        2)      The second part is the "coulda," "shoulda," "woulda" part: "or capable of being used." This is the part "everyone" construes to mean and refer to physical, mechanical design. But, if *that* were the *proper* construction, Lozman would have lost.

    c.      This second verb clause is the "pirate speak" part drafted into the legislation with the *intent* that it *be* deceiving; it *actually* "asks" whether the "target" has consented to being regulated.

    d.      To realize that "transportation" regulatory policy comes straight out of the Sixth Plank is to realize (1) that "by consent" is the only way Communist policy can ever apply to anyone in UNITED STATES and (2) that "by

deception" is the only way Community policy has survived in UNITED STATES for as long as it has survived.

2.    It's from the analysis of this two-part verb clause that one confidently concludes this formulation:

No "transportation" + No "consent" = No "vessel."

F.    The definition of "**vehicle**" is practically identical to "vessel,"not only in structure but in content, in particular the "coulda, shoulda, woulda" second, disjunctive verb clause.

1.    Therefore, applying *Lozman* (2013), this second verb clause, this "***or may be*** transported" clause, this "coulda, shoulda, woulda" clause, is "pirate-speak," i.e., intentional deception, drafted straight into the legislation to *produce* "universal" misdirection on how this actually works, namely that this Sixth Plank policy can't function with this foundational "consent" element.

2.    Applying *Lozman* (2013), we confidently apply this formulation:

No "transportation" + No "consent" = No "**vehicle**."

3.    This second verb clause is the "No 'consent'" element.

G.    STATE never had a case, because STATE never had evidence of either verb clause, i.e., either "transportation" or "consent."

1.    No "transportation."

a.    Perkins was not at any time relevant to this matter

"carrying passengers or cargo."

b. Perkins was traveling with his family to visit family during the end-of-calendar year holiday travel season.

c. There were no "passengers."

d. There as no passenger manifest.

e. There was no "cargo."

f. There was no bill of lading.

g. There was no "hire."

h. Perkins was not at any time relevant to this matter

1) removing people and/or property

2) from one place to another

3) *for hire*

4) under the choice of law of the "place" called "this state," or any other choice of law for that matter.

i. [Intentionally skipped]

j. It's so obvious that this was a *non*-commercial setting that the CITY employee initiating the stop never made inquiry into *any* of these commercial facts.

2. No "consent."

a. The "transportation" regulatory scheme implements Sixth Plank policy of centralization of "transportation" control in the hands of "the State."

b. This is one of the more obvious reasons that there's one

and only one way "centralized" "transportation" regulatory authority applies, at all, namely by the commercial consent of the "target."

c.   Another is this. How in blue blazes do *commercial* regulatory standards apply in a *non*-commercial context? There's one and only one way, namely by the consent of the "target."

d.   Commercial consent arises, if at all, through the paperwork shuffle when the car is first purchased. Typically, the car buyer is seduced into exchanging the "full title" document, which is the Manufacturer's Statement of Origin (MSO), for the "legal title only" document produced by the (main) beneficiary, DMV, called the "Certificate of Title." That transaction creates a trust in which the party named in the "Certificate of Title" is the fiduciary; DMV is the main beneficiary; and the trust *res* is the car identified in that same "Certificate of Title."

e.   Perkins had terminated the last of the "Certificate of Title" trusts in his name early in Dec., 2016, which was approximately ten days prior to the stop.

f.   Contributing massively toward creation of the problems here is the fact that BREWSTER (DMV), under advice

from STATE's AG's Office, has perpetually **refused** to update DMV's records. Perkins is litigating that issue in a different suit.

3.   No "transportation" + No "consent" = No "**vehicle**."

a.   Because there was never any evidence of "**vehicle**," as a matter of law, it follows also that there was also never any evidence of any "**motor vehicle**," "**driving**," or "**operating**," all as a matter of law.

b.   There wasn't even Probable Cause for the stop. Perkins had given full and complete Notice of his *non*-consent via the use of *non*-DMV-approved taggage.

H.   Despite having zero jurisdiction, MISCHTIAN

1.   denied all of Perkins's jurisdictional challenges,

2.   limited Discovery per the anti-*pro-se* litigant policy, which policy facially compels commerce,

3.   tried the case before an advisory panel,

4.   overruled all of Perkins's trial-time jurisdictional challenges,

5.   and accepted the advisory panel's opinion of guilty.

6.   MISCHTIAN set sentencing for a following date.

I.   [Intentionally skipped.]

J.   It was at and for sentencing that MISCHTIAN flash-jailed Perkins.

---

Original Complaint – Flash Jail, etc. (Belton) (PERKINS)    13

**Flash-jailing regarding Bond that Perkins already had**

18.    Throughout trial, Perkins was under an Appearance Bond, cash, of $1,500. There was never basis to reevaluate that Bond, given that Perkins was always in attendance at all the settings.  There was never any violation of Bond conditions.

19.    Yet, at the conclusion of sentencing, while this original Bond was fully still in force and effect, MISCHTIAN flash-jailed Perkins, requiring him to post yet *another* Bond in order to secure his release pending appeal. That second Bond was a P.R. Bond at the stated amount of $3,000.

20.    Since that time, all mention of that P.R. Bond has since disappeared, and the whole of the situation regarding Perkins's release pending appeal (both cases were appealed; 3d.CoA has consolidated the two matters and effectively dismissed the appeal of the case that was finally dismissed at the trial level) is back to the original Appearance Bond of $1,500.

21.    Regarding this flash-jailing episode, Perkins was arrested/seized, of course, and searched. Despite having had not one single issue regarding appearance, COUNTY processed Perkins as if per a standard arrest.

22.    Perkins spent six hours in jail that day, despite the fact that he had a perfectly viable Bond, cash Bond, in full force and effect.

23.    Even if there is a need for someone, who already has an Appearance Bond, and who is then convicted, to appear before the Sheriff and confirm Bond, that's one whale of a lot different from being arrested and jailed for the day.

**The Claims**

24. What has happened all the way through this manifest abuse of authority against Perkins has been the intent to intimidate, harass, and/or retaliate against Perkins for his assertion of his right not to contract, his right not to exercise the privilege of driving, his right of presenting his own defense, his right to Due Process, which includes Discovery, and then, of course, his (statutory) right to appeal. MISCHTIAN's flash-jailing episode is one *more* act in furtherance of COUNTY's policy of applying the FBI / SPLC political indoctrination, and the policy of intentional, unmitigated harassment of those who dare challenged jurisdiction in "transportation" matters, instead of applying the laws of TEXAS, which all executive and judicial officers involved have sworn oaths of office to apply and uphold.

25. At all times and for all purposes, MISCHTIAN acted under color of law and office.

26. At all times and for all purposes, MISCHTIAN also acted per COUNTY's "witch hunt" policy.

    A. This case not only got started, on the street, the way it did, but also went through the Probable Cause step the way it did, namely without one shred of Probable Cause, and then went to and through the trial the way it did, ***not*** because there was one *shred* of factual basis for *any* of that, but rather because it's COUNTY's policy to prefer and to advance the witch hunt.

    B. At all times and for all purposes, COUNTY's policy in these

"transportation" matters is to apply the political indoctrination presented and advocated by the FBI and the SPLC, which policy greatly encourages law enforcement and judicial officers to stigmatize, and to participate in the systemic policy, county-wide, state-wide, even nation-wide, to stigmatize, any and all who dare challenge jurisdiction in "transportation" matters as "domestic terr*rists," via the politically correct label of "sovereign citizen."

C.   In the active pursuit of this political "witch hunt" agenda, it has never mattered to the indoctrinated executive and judicial officers that none of the people spewing forth all this political indoctrination bothers to explain the definition of "**vehicle**" *or* the difference between an ambassadorial-esque "immunity" defense (for which there is no known treaty) and Perkins's "no commercial nexus" defense.  All material distinctions, which they don't even realize exist, are poo-poo'd by those who have faced them so as to perpetuate the largest possible Pavlov's dogs' response regarding "transportation" enforcement.

D.   Can't have Texans, or *any* Americans, refusing to consent to Communist policy. Nope, can't have any of that. So, those who *do* stop consenting to being regulated per Communist, Sixth Plank policy get kicked in the head by all on the "government" side of the matter, executive and judicial alike.

27.   Applying that political indoctrination against Perkins, COUNTY, via the Probable Cause step and then MISCHITIAN's trial, maintained the instantly

applied stigmatization of "sovereign," i.e., "domestic terr*rist," throughout the whole of the trial process.

A. This is what confesses that those politically indoctrinated not only have no clue what a "sovereign" or is what constitutes the basis for the "sovereignty" defense but also that they just flat out don't care. They've got their political agenda, and that's all that matters.

B. This is also what confesses that those politically indoctrinated not only have no clue what the law is, either, but also that they just flat out don't care. Their political agenda is all that matters.

C. While selective prosecution is illegal, in and of itself, it's been applied here without one shred of basis, even in the politically corrupted perspective, to do so. The political indoctrination is preferred over the law. Politics are *so* much easier – no more thinking required.

D. Per this "witch hunt" policy, basic "tag disputes" become instantly, and insanely, elevated into matters of national security, purportedly then also warranting the throwing out of the window all of everything about law and order, which banana republic approach was intended to be defeated throughout America by such conflicts as WWI and WWII.

E. Per this "witch hunt" policy, legal matters that the "governmental unit" can't prevail in, as a matter of law, become political matters in which the law just flat out doesn't matter.

28. COUNTY's liability here isn't in the capacity of respondeat superior. COUNTY's liability arises from being a conspirator throughout.

29.   At all times and for all purposes, Perkins is a person within the jurisdiction of the United States and of Texas and subject to the respective laws thereof.

30.   Perkins's demands are against MISCHTIAN and COUNTY for joint and several liability as conspirators against Perkins.

Illegal arrest.

31.   Perkins has the right to be free from unreasonable seizure.

32.   On March 20, 2019, without basis in law or fact, and without ever having had jurisdiction in the matter from Day One, MISCHTIAN ordered Perkins arrested and flash jailed.

33.   Perkins was deprived of his liberty for six hours that day, despite the fact he still had a perfectly viable, extant, active, in force, unblemished, cash, $1,500 Appearance Bond, which had been on deposit from the time that entire matter got started.

34.   This seizure, via arrest, was unreasonable.

35.   There was absolutely, positively no reason, other than harassment, intimidation, and/or retaliation, i.e., application of the "witch hunt" policy, to arrest Perkins and to compel him into some new and different Bond for purposes of release pending appeal.

36.   Perkins was released upon his obtaining a $3,000 P.R. Bond, which hasn't been mentioned since.

37.   For the total claim, Perkins asserts damages of $1,000,000 per day.

38.   Perkins was detained for that part of that one day.

39.   Therefore, for actual damages for this illegal arrest, Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

40.   Regarding punitive damages.

   A.   MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

   B.   MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

   C.   Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY,  jointly and severally.


Illegal search.

41.   Perkins has the right to be free from unreasonable seizure.

42.   On March 20, 2019, without basis in law or fact, and without ever having had jurisdiction in the matter from Day One, MISCHTIAN ordered Perkins arrested and flash jailed.

43.   Incident to that illegal arrest, Perkins was searched before being jailed.

44.   This search, incident to the illegal arrest, was unreasonable.

---

Original Complaint – Flash Jail, etc. (Belton) (PERKINS)                         19

45.     There was absolutely, positively no reason, other than harassment, intimidation, and/or retaliation, i.e., application of the "witch hunt" policy, to arrest Perkins and to search him.

46.     Therefore, for actual damages for this illegal search, Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

47.     Regarding punitive damages.

    A.      MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

    B.      MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

    C.      Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY,  jointly and severally.

False imprisonment.

48.     Perkins was held in jail against his will for six hours.

49.     There was no basis in law or fact for depriving Perkins of his liberty. The Bond Perkins had going into this flash-jailing episode is the Bond he still has.

50.    For false imprisonment, Perkins demands one million dollars ($1,000,000.00) actual damages from MISCHTIAN and BELL COUNTY, jointly and severally.

51.    Regarding punitive damages.

   A.    MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

   B.    MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

   C.    Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY, jointly and severally.


<u>Witness intimidation.</u>

52.    Everything about what will prove to be a malicious prosecution has been witness intimidation.

   A.    The entire objective in the abuse of authority throughout has been to get Perkins to shut up about, to withhold his documents and his testimony about, how the "transportation" enforcement mechanism actually works.

B.    The politically indoctrinated perspective, as errant as it can be, has been that Perkins is part of some "domestic terr*rist" effort that goes by the labeling of "sovereign citizen." Thus, as errant as it is, as libelous and slanderous as that is, there's the plain political motive, as supplied by COUNTY's "witch hunt" policy for this heavy-handed, lawless, selective prosecution approach to "transportation" prosecution matters, throughout.

53.    The motive for MISCHTIAN's words and actions were to harass, intimidate, and/or retaliate against Perkins for Perkins's exercise of his right not to contract (i.e., not to agree to be regulated per the TRANSP. CODE), and his right not to exercise a privilege (which is what "driving" is, namely a regulated privilege).

54.    For witness intimidation, via the harassment, intimidation, and/or retaliation that motivated this flash-jailing episode, Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

55.    Regarding punitive damages.

A.    MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

B.    MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins

proved up not only pre-trial but also during trial.

C.    Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY,  jointly and severally.

<u>Deprivation of rights, including harassment / intimidation / retaliation in</u>
<u>response to Perkins's exercise of his right not to contract.</u>

56.    Perkins has the right not to contract / agree / consent.  Not only may no one be compelled to contract, but also, far more directly relevant here, no one may be compelled to be a fiduciary.

57.    MISCHTIAN flash-jailed Perkins in puerile retaliation and via abuse of office, as a purely political demonstration of power, in furtherance of COUNTY's "witch hunt" policy in such matters, for Perkins's assertion of his right *not* to be a fiduciary, i.e., Perkins's right *not* to contract, to being regulated per Sixth Plank policy, at all, much less in his *non*-commercial travel activity.

58.    The arrest and searched were illegal, given that Perkins had a perfectly viable Appearance Bond already in place.

59.    MISCHTIAN's demonstration of power was motivated in part by the fundamental notion that MISCHTIAN had concluded that he had subject matter jurisdiction and personal jurisdiction that he never had. Thus, this flash-jailing episode was a "demonstration" of political power for the specific

purpose of demonstrating power.  However, nothing about this "demonstration" created in MISCHTIAN jurisdiction that he never had.

60.    It's directly because Perkins has asserted his right not to contract that MISCHTIAN has no jurisdiction.

61.    For violating Perkins's right *not* to contract, via the harassment, intimidation, and/or retaliation that motivated this flash-jailing episode, Perkins demands two and one half million dollars ($2,500,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

62.    Regarding punitive damages.

    A.    MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

    B.    MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

    C.    Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely two and one half million dollars ($2,500,000.00) from MISCHTIAN and BELL COUNTY,  jointly and severally.

<u>Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right not to exercise a privilege.</u>

63.    Perkins has the right *not* to exercise a privilege.

64.    **"Driving"** is not defined in Chap. 521, anywhere, but only in Chap. 522, of the TRANSP. CODE, i.e., only in the "commercial" "driving" context. "Driving" is a privilege. "Driving" is regulated commercial activity. Each individual has a choice whether to exercise a privilege or not.  No one may be compelled to **"drive,"** to "carry passengers or cargo" by means of a land-going conveyance, any more than one may be compelled to incorporate.

65.    In power-play retaliation against Perkins for his exercise of his right *not* to be a fiduciary, i.e., his right *not* to "drive," i.e, his right *not* to exercise a privilege (of engaging in "commerce" as a "driver" or "operator"), MISCHTIAN flash-jailed Perkins, i.e., had Perkins arrested, held illegally, and searched illegally.

66.    For violating Perkins's right *not* to exercise a privilege, namely "driving," via the harassment, intimidation, and/or retaliation that motivated this flash-jailing episode, Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

67.    Regarding punitive damages.

A.    MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

Original Complaint – Flash Jail, etc. (Belton) (PERKINS)                    25

B.  MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

C.  Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY, jointly and severally.

<u>Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to present his own defense.</u>

68.  Perkins has the right to present his own defense.

69.  Despite the existence of that right, there's a standard, systemic policy against *pro se* litigants, generally.

70.  On top of that, this systemic angst against *pro se* litigants is multiplied several times in the context of these political indoctrination matters, in which there's the appearance of social tolerance, even social approval, of abuse of authority when that abuse is directed against those politically stigmatized, rightly or wrongly, as "sovereign citizens," i.e., "domestic terr*rists."

71.  Thus, contributing to MISCHTIAN's power-play, via flash-jailing Perkins, is the simple fact that Perkins is proceeding *pro se*.

72.  One of these days, it may come to mind that there's no "licensed" attorney who is both (1) competent enough to run the defense that Perkins is running and (2) going to accept a fee commensurate with this context. The attorneys

who understand the system at the level Perkins understands it charge four-digit hourly rates and have minimum six-digit retainer fees.

73. For violating Perkins's right to present his own defense, via the harassment, intimidation, and/or retaliation that motivated this flash-jailing episode, Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

74. Regarding punitive damages.

A. MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

B. MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

C. Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY, jointly and severally.

<u>Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to Due Process, including Discovery.</u>

75.    Perkins has the Due Process right to full Discovery and the right *not* to be compelled into commerce.

76.    Nonetheless, the TEXAS legislature has been seduced to join in the nation-wide assault against *pro se* litigants, as proved by there presently being on the books the idea that *pro ses* should be limited in their Discovery requests.

77.    Thus, to obtain full Discovery, the present policy in TEXAS compels commerce, i.e., compels the *pro se* party to engage the services of an attorney.

78.    Even by acting through an attorney, there's some question whether the otherwise-*pro-se* party would ever see the Discovery obtained, even if the attorney were to receive it.

79.    During the course of the trial in MISCHTIAN's court, Perkins fully and formally objected to those illegal restraints on Discovery.  Such restraints compel commerce by compelling the otherwise-*pro-se* party to retain counsel in order to exercise his (statutory) rights regarding Discovery.

80.    Thus, contributing to MISCHTIAN's power-play, via flash-jailing Perkins, is the fact that Perkins asserted his Due Process rights of full Discovery and objected to this latest implementation of compelled commerce directed specifically at *pro se* litigants.

81.    For violating Perkins's right to Due Process, including Discovery, coupled with Perkins's right not to be compelled into commerce, via harassment, intimidation, and / or retaliation that motivated this flash-jailing episode,

Original Complaint – Flash Jail, etc. (Belton) (PERKINS)                                28

Perkins demands one million dollars ($1,000,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

82.    Regarding punitive damages.

A.    MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

B.    MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

C.    Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely one million dollars ($1,000,000) from MISCHTIAN and BELL COUNTY,  jointly and severally.

Deprivation of rights, including harassment / intimidation / retaliation in response to Perkins's exercise of his right to appeal.

83.    Perkins has the (statutory) right to appeal.

84.    What was the entire issue of Bond about in the first place?  Perkins's intent to exercise his right to appeal.

85.    What did MISCHTIAN flash-jail Perkins in order to do?  Set up *another* Bond in order to permit Perkins to be at (quasi-) liberty pending resolution of the appeal.

Original Complaint – Flash Jail, etc. (Belton) (PERKINS)                                    29

86.     What, then, was this entire flash-jailing episode geared to accomplish? Harass, intimidate, and/or retaliate against Perkins for his daring to compel MISCHTIAN to apply the laws of "this state" to this matter, i.e., to continue the challenge MISCHTIAN's jurisdiction in this "transportation" matter.

87.     What is the main reason for COUNTY's policy? To abuse, under color of law and office, those who challenge jurisdiction in "transportation" matters.

88.     What is the appeal? The continuation of the jurisdictional challenge.

89.     For violating Perkins's right to appeal, via harassment, intimidation, and / or retaliation that motivated this flash-jailing episode, Perkins demands two and one half million dollars ($2,500,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

90.     Regarding punitive damages.

    A.     MISCHTIAN acted at all times regarding this flash-jailing episode intentionally, willfully, grossly negligently, with scienter, egregiously, unconscionably, with callous disregard, and/or with deliberate indifference.

    B.     MISCHTIAN also acted without one shred of jurisdiction. STATE never had evidence of either "transportation" or "consent," as Perkins proved up not only pre-trial but also during trial.

    C.     Therefore, in addition to the actual damages, Perkins also demands punitive damages in an amount equal to the actual damages amount, namely two and one half million dollars ($2,500,000.00) from MISCHTIAN and BELL COUNTY, jointly and severally.

---

## Request for Relief

91.   Perkins requests relief in the form requested throughout this Original

Complaint.

A.   Perkins requests the damages claimed for each of his claims, including

punitive damages in an amount equal to the actual damages.

92.   Perkins also requests costs.

93.   Perkins also requests any and all other relief, whether at law, in equity, or

sui generis to which he may show himself justly entitled.

Respectfully submitted,

/s/  Wesley Perkins
WESLEY PERKINS
P.O. Box 152766
Austin, TX  78715-2766
court@wesperkins.com

## § 1746 DECLARATION – WES PERKINS

Per 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States, I, WES PERKINS, depose and declare (or certify, verify, or state), that I am at least 21 years of age, that I am competent to make this Affidavit / Declaration, that I have personal knowledge of these facts, and that these facts are true and correct.

The facts asserted in this Original Complaint are true and correct.

The Exhibits in the accompanying Appendix, yet to be filed, are detailed further in the Appendix, along with related details relevant to this matter and the documents.

Further, Declarant sayeth not.

Executed on the __20th__ day of March, 2020

/s/ Wes Perkins

WESLEY PERKINS, Declarant

## Certificate of Service

By my signature below, I certify that within 90 days of the date of filing of this suit, I will Serve the named parties and their associated agents and related parties for Service with a true and correct copy of this Original Complaint by electronic means, whether a thumb drive or a CD or DVD disc, accompanied by Summons, yet to be issued, by means of contracting the United States Postal Service to perform the actual Service.

/s/ Wes Perkins

WESLEY PERKINS, Declarant